UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

FRIENDS OF TIMS FORD, )
)
   *Plaintiff*, )
)
v. ) Case No. 4:06-cv-66
)
TENNESSEE VALLEY AUTHORITY, ) Judge Mattice
*et al.*, )
)
   *Defendants.* )

## **MEMORANDUM AND ORDER**

In the instant case Plaintiff brings three causes of action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, for alleged violations of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and the Tennessee Valley Authority Act of 1933 ("TVA Act"), §§ 4 and 26a, 16 U.S.C. §§ 831c and 831y-1. Plaintiff also asserts state-law causes of action.

The Court has raised the issue of Plaintiff's standing to bring the instant action, and has received briefs from the parties.[1] On January 14, 2008, the Court ordered Plaintiff to show cause why it should not dismiss the instant case for lack of standing (Court Doc. 57, Order of January 14, 2008.) Plaintiff has responded by submitting affidavits of two of its members (*see* Court Doc. 61-1, Aff. of Robert E. Taylor; Court Doc. 61-2, Aff. of Steven G. Hammond). For the reasons set forth below, the Court will **DISMISS WITHOUT PREJUDICE** Plaintiff's federal causes of action for lack of standing

---

[1] The Court raised the issue *sua sponte*. *See Cmty. First Bank v. Nat'l Credit Union Admin.*, 41 F.3d 1050, 1053 (6th Cir. 1994) (holding that standing "is a qualifying hurdle that plaintiffs must satisfy even if raised *sua sponte* by the court."). Further, the Court instructed the parties to submit briefs and evidentiary materials, if any, on the issue. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing").

and will **DECLINE** to exercise supplemental jurisdiction over Plaintiff's and Counterplaintiffs' state-law causes of action.

## I. PROCEDURAL POSTURE

Plaintiff, an unincorporated association, asserts causes of action against Defendants Tennessee Valley Authority ("TVA"), a federal corporation, and the Tennessee Department of Environmental Conservation ("TDEC"), a state agency. Additionally, Intervening Defendants assert a state-law counterclaim against Plaintiff.

## II. FACTS

United States Magistrate Judge William B. Mitchell Carter has recited the facts relevant to this Order in his Memorandum and Order of July 7, 2007 (Court Doc. 33). To the extent that the facts contained in Magistrate Judge Carter's Memorandum and Order are not disputed by Plaintiff (*see* Court Doc. 34, Pla.'s Objection to Magistrate Judge's Memorandum and Proposed [sic] Order), the Court incorporates by reference Magistrate Judge Carter's recitation of facts.

## III. ANALYSIS

Before addressing the elements of standing, the Court must distinguish Plaintiff's federal claims from its state-law claims. For its federal claims, Plaintiff alleges violations of the NEPA and §§ 4 and 26a of the TVA Act. Neither act provides a private right of action. *Sierra Club v. Slater*, 120 F.3d 623, 630 (6th Cir. 1997); *Matthews v. Town of Greeneville*, No. 90-5772, 1991 WL 71414, at *1 (6th Cir. May 2, 1991). Both acts, however, can be judicially reviewed under the APA, which provides a right of action to any person aggrieved by the acts or omissions of a federal agency. *See* 5 U.S.C. §§ 702, 706. The APA, however, is not applicable to state agencies. *Sw. Williamson*

*County Cmty. Ass'n, Inc. v. Slater*, 173 F.3d 1033, 1035 (6th Cir. 1999) ("By its own terms, the APA does not apply to state agencies."); *see also Sw. Williamson County Cmty. Ass'n, Inc. v. Slater*, 243 F.3d 270, 275 (6th Cir. 2001) (holding that a plaintiff may not sue the Tennessee Department of Transportation under the APA). Accordingly, for the purpose of determining Plaintiff's standing, the Court interprets Plaintiff's Amended Complaint (Court Doc. 39-2) as asserting federal claims only against Defendant TVA. Conversely, then, Defendant TDEC faces only state-law claims. The Court will begin its standing analysis by turning its attention to Plaintiff's federal claims under the APA against Defendant TVA.

"To establish standing to sue under the Administrative Procedure Act, a plaintiff must satisfy constitutional prerequisites derived from the 'case or controversy' requirement of Article III of the Constitution and must demonstrate the inapplicability of 'prudential' limitations imposed by the APA. The two sets of requirements overlap substantially." *Ctr. For Biological Diversity v. Lueckel*, 417 F.3d 532, 536 (6th Cir. 2005) (internal citations omitted). As explained below, the Court need only look to the Article III requirements in the instant case.

To enjoy standing pursuant to Article III, Plaintiff must have a "personal stake" in the outcome of the litigation. *Baker v. Carr*, 369 U.S. 186, 204 (1962). A plaintiff bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Since [the elements required to establish standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive

stages of the litigation . . . ." *Id.*  As the Court invited the parties to submit briefs and evidence on the issue of standing, the most applicable standard at this juncture is that of summary judgment.  *See id.*  Thus, Plaintiff "can no longer rest on [general factual allegations of injury resulting from Defendants' conduct] but must 'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of [determining standing] will be taken to be true." *Id.*  In evaluating whether the named Plaintiff has borne its burden, the Court must determine whether standing existed at the time the Complaint was filed. *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 524, 526 (6th Cir. 2001).

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution.  *Lujan*, 504 U.S. at 560.  Plaintiff argues that it has fulfilled this requirement through the doctrine of associational standing.  An association has standing to sue based on injury to one of its members if, *inter alia*, the member has standing to sue in his own right.  *Hunt v. Wash. State Apple Adver. Comm.*, 432 U.S. 333, 343 (1977).  Thus, Plaintiff must show that at least one of its members has demonstrated the following:

> First, he must demonstrate injury in fact—a harm that is both concrete and actual or imminent, not conjectural or hypothetical.  Second, he must establish causation—a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant.  And third, he must demonstrate redressability—a substantial likelihood that the requested relief will remedy the alleged injury in fact.  These requirements together constitute the irreducible constitutional minimum of standing, which is an essential and unchanging part of Article III's case-or-controversy requirement, and a key factor in dividing the power of government between the courts and the two political branches.

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (quotations and citations omitted).

It is thus under this structure that the Court must evaluate Plaintiff's standing.

### A. Injury in Fact

Article III "requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge Christian Coll. v. Ams. United for Sep. of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (internal quotations omitted). The United States Supreme Court's "clear precedent require[es] that the allegations of future injury be particular and concrete." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998). When, as here, a plaintiff seeks injunctive and declaratory relief, he must establish that there is a "sufficient likelihood that he will again be wronged in a similar way . . . ." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Plaintiff's members' affidavits establish that they are suffering adverse consequences of the two community boat docks currently installed in close proximity to them, including "significant [additional] boating traffic resulting in impaired boating safety, significantly more bank erosion, and degraded water quality." (Aff. of Robert E. Taylor ¶ 2.) The affiants go on to state that "[n]ormal activities on these two large docks will add water pollution, significantly more noise and the docks themselves block the view . . . of the pristine wooded shoreline." (*Id.*; *see also* Aff. of Steve G. Hammond.)

The Court may assume that, given the proximity of the docks to the affiants' land, these statements are sufficient to establish an injury in fact *stemming from the constructed docks*. *See Sierra Club v. Morton*, 405 U.S. 727, 734 (1972) ("Aesthetic and environmental well-being" "may amount to an 'injury in fact . . . .' "). They are insufficient, however, to demonstrate an injury in fact arising out of possible future development of community docks. Any such "allegations of future injury [must] be

particular and concrete . . . ." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 109 (2000). Plaintiff's members' affidavits do not specify—or even attempt to predict—the location of future TVA projects or how these projects will affect Plaintiff's members. Plaintiff fails to "show that actual, site-specific activities . . . threaten to diminish their members' enjoyment of the designated [natural resource]." *Ctr. For Biological Diversity v. Lueckel*, 417 F.3d 532, 537 (6th Cir. 2005). ("Finding an environmental injury based on [a land and resource management plan] alone, without reference to a particular site-specific action, would 'take[ ] us into the area of speculation and conjecture.' " (quoting *Sierra Club v. Robertson*, 28 F.3d 753, 758 (8th Cir. 1994) (quoting in turn *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974))); *see Lujan*, 504 U.S. at 565-66 ("[A] plaintiff claiming injury from environmental damage must use the area affected by the challenged activity . . . ."). Nor is Plaintiff's request for attorney's fees sufficient to establish an injury in fact. *See Steel Co.*, 523 U.S. at 107 ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit"). Accordingly, the only injury in fact Plaintiff may have established involves the consequences to the affiant members' property of the existing two community docks.

### B. Redressability

Assuming Plaintiff has established that the community docks currently in place have wrought an injury in fact upon at least one of Plaintiff's members, the Court must next determine whether the relief Plaintiff seeks will redress this injury. Redressability "ultimately turns on whether a plaintiff gets something (other than moral satisfaction) if the plaintiff wins." *Drutis v. Rand McNally & Co.*, 499 F.3d 608, 612 (6th Cir. 2007).

Here, Plaintiff asks only for declaratory and injunctive relief. "A plaintiff seeking declaratory relief establishes redressability if the practical consequence of a declaration 'would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'" *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1163 (10th Cir. 2005) (quoting *Utah v. Evans*, 536 U.S. 452, 464 (2002)).

Plaintiff urges the Court to grant the following relief for Defendant TVA's alleged violations of the NEPA and the TVA Act:[2]

> 2. Enter a preliminary injunction enjoining Defendants, and each of them, from proceeding with any additional development warranting community boat dock approvals and/or permits; or any other anticipated development, such as transfers of land for residential or commercial development on the reservoir pending the trial of this action.
>
> 3. Enter a Declaratory Judgment declaring unlawful the Defendants' implementation of the FEIS/LMDP for the Tims Ford Project as violations of NEPA, 43 U.S.C. Section 433(2)(c), CEQ Guidelines at 40 CFR Section 1502.9; and 18 CFR section 1304.206, TVA Rules and Regulations and the TVA Act of 1933, as amended, to wit, 16 U.S.C. Section 831(c)(k)(a).
>
> . . .
>
> 6. Enter a temporary injunction enjoining Defendants, and each of them, from proceeding with any additional development warranting community boat dock approvals and/or permits; or any other anticipated development, such as transfers of land for residential or commercial development on the reservoir until the Defendants have caused to be

---

[2] Plaintiff also requests a

> Declaratory Judgment declaring the action of the State Defendant, TDEC, of unlawfully covenanting with the Grantee of the Quitclaim Deed for the development of Fanning Bend to ignore the clear mandate of Congress in the TVA Act of 1933, as amended, to be an arbitrary and capricious abuse of discretion and power, an unconstitutional usurpation of the Supremacy Clause to the U.S. Constitution and contrary to both federal and state law.

(Am. Compl. 25.) As discussed above, however, Plaintiff only asserts state-law causes of action against Defendant TDEC. Accordingly, the Court will not consider this requested remedy in determining whether Plaintiff has standing to bring its federal causes of action. For the same reason, the Court will not consider Plaintiff's request to "[e]nter an Order requiring and commanding the State Defendant to enforce the restrictive covenants in the Quitclaim Deed." *Id*.

prepared and circulated for public and interagency comment an adequate Supplemental Draft and Final Environmental Impact Statement identifying and discussing in detail the environmental impacts from the development of lands behind the 51 Zone 8 parcels including anticipated impacts from additional boats allowed access to the reservoir that would not have that access but for the Zone 8s; the environmental impacts of permitting community boat docks on Fanning Bend in excess of those planned and in size much larger than allowed by TVA regulation; the environmental impacts of permitting community boat docks on any of the other anticipated Zone 7 parcels; the environmental impacts to the water quality of the reservoir and to the quality of the human environment from allowing the density of boats on the reservoir to exceed 10 acres per boat, a condition recognized by qualified boating survey experts as exceeding the carrying capacity of the reservoir, in compliance with NEPA, 43 U.S.C. Section 433(2)(c) and CEQ Guidelines at 40 CFR Part 1500; and discussing the new land management policy announced formally and published by the TVA Board in November 2006, eliminating or limiting future residential development and retail or other non-industrial commercial use on TVA reservoirs, and imposing a higher recreational value on the use of public lands adjoining TVA reservoirs; and how that new land policy may impact the development of properties around the Tims Ford Reservoir.

(Am. Compl. 25-26.) Thus, the relief Plaintiff seeks for its NEPA and TVA Act claims can be condensed into two requests: (1) a declaration that TVA's implementation of the Final Environmental Impact Statement ("FEIS") and Land Management and Development Plan ("LMDP") for the entire Tims Ford project is contrary to the NEPA and the TVA Act, and (2) an injunction against constructing additional community boat docks in the future.

As stated above, however, Plaintiff has not established an injury in fact stemming from the *possibility of future* community docks. The only alleged injury properly before the Court is that which may have been caused by the two community docks already in place. An injunction against *future* community docks will not redress the harm allegedly caused by the two existing docks. Plaintiff's requests for injunctive relief therefore fail the redressability prong of the Court's standing inquiry.

Neither will Plaintiff's request for the Court to generally declare Defendant TVA in violation of the NEPA and the TVA Act redress its members' alleged harm. Plaintiff does not ask that the Court order Defendant TVA to reposition, reconfigure, reduce, or remove the existing community docks. It does not ask the Court to order remedial measures to counteract or prevent the harms allegedly caused by the current docks. Plaintiff has not shown that such a declaration would confer any relief from Defendant TVA to its members in relation to the existing docks. As the Supreme Court explained in a similar context,

> [i]n all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces-the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant. This is no less true of a declaratory judgment suit than of any other action. The real value of the judicial pronouncement-what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion-is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*

*Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (describing test for "prevailing party" under 42 U.S.C. § 1988). At most, such a declaration may give Plaintiff's members whom are affected by the existing docks a generalized sense of vindication. Article III does not, however, permit the Court to vindicate Plaintiff's rights in the abstract. *Steel Co.*, 523 U.S. at 107 ("[A]lthough a suitor may derive great comfort and joy from the fact that . . . a wrongdoer gets his just deserts, or that the Nation's laws are faithfully enforced, that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury."). Accordingly, the Court finds that Plaintiff's request for a declaration that TVA's implementation of the FEIS/LMDP for the entire Tims Ford

project is contrary to the NEPA and the TVA Act does not redress any injury in fact it may have established.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff has not borne its burden to show that it has standing to assert its federal claims, under the APA, for alleged violations of the NEPA and §§ 4 and 26a of the TVA Act. Accordingly, these claims are **DISMISSED WITHOUT PREJUDICE**. As only state law claims remain, the Court **DECLINES** to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c)(3), and **DISMISSES** these claims **WITHOUT PREJUDICE**.

SO ORDERED this 20th day of March, 2008.

*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE